Barbara Franklin McKENNA, Appellant,

v.

Caspar W. WEINBERGER, Secretary
of Defense, et al.

No. 83–1334.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 22, 1983.

Decided March 2, 1984.

Patricia L. Brown, Washington, D.C., for appellant.

Christine R. Whittaker, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before MIKVA and EDWARDS, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by BAZELON, Senior Circuit Judge.

BAZELON, Senior Circuit Judge:

Barbara F. McKenna resigned under threat of discharge from the Defense Intelligence Agency (DIA) in August, 1978. Ms. McKenna brought suit, claiming 1) that this action was motivated by sex discrimination in violation of Title VII of the Civil Rights Act;[1] 2) that, alternatively, it was in retaliation for her complaints about discriminatory treatment, also in violation of Title VII;[2] and 3) that in effecting her discharge, the agency failed to follow its own procedures in violation of § 706 of the Administrative Procedure Act (APA).[3] After a trial on the merits, the district court ruled in favor of the agency on the first two claims and held that the exclusive remedy provisions of Title VII precluded suit under the APA. We hold that the district court's findings on the discrimination and retaliation claims were not clearly erroneous and, consequently, affirm on those issues. In addition, we hold that, although a claim under the Administrative Procedure Act is not barred by Title VII, nothing in the record supports appellant's APA claim.

## I. BACKGROUND

Barbara F. McKenna was hired by the DIA as an intelligence analyst on August 22, 1977. As a new federal employee, her continued employment was conditioned upon successful completion of a one year probationary period. During that probationary period, she was subject to dismissal for any legitimate reason, or for no reason at all.[4]

Ms. McKenna's first assignment was to the Federal Research Division (FRD) of the Library of Congress. There she was assigned to a group with four other analysts, three women and one man, under the supervision of Ms. Ruth Miller. She spent two months in this section. Ms. Miller testified at trial that the other analysts, both male and female, complained that Ms. McKenna was abrasive, self-centered and overbearing.[5] Ms. Miller conceded, however, that she was physically present for only three of the approximately eight weeks that Ms. McKenna was in her section, and that she never observed Ms. McKenna interacting in a professional group context.[6]

Ms. McKenna was next assigned to an introductory course for analysts at the Defense Intelligence School of the Department of Defense. She compiled an outstanding record at the school; at trial, however, one of her classmates testified that Ms. McKenna had interpersonal difficulties in the negotiation portion of the course.[7]

Ms. McKenna then proceeded to the Military Support Activity Section of the China Branch under the supervision of Ms. Ruth Miner. For most of this period Ms. McKenna lacked a security clearance and therefore worked with one other employee in a segregated area of the section. According to Ms. Miner, there were continu-

1. 42 U.S.C. § 2000e–2(a) (1976).

2. 42 U.S.C. § 2000e–3(a) (1976).

3. 5 U.S.C. § 706 (1982).

4. *See Winston v. Smithsonian Science Information Exchange, Inc.,* 437 F.Supp. 456 (D.D.C. 1977), *aff'd,* 595 F.2d 888 (D.C.Cir.1979); 5 U.S.C. § 3321 (1982).

5. Tr. Oct. 8 at 177.

6. *Id.* at 189.

7. Tr. Oct. 9 at 21.

ing problems with Ms. McKenna throughout the approximately seven weeks she spent in this section.[8] Ms. Miner testified that she placed a "verbal qualifier," *i.e.*, a negative oral report, in Ms. McKenna's file at mid-year review.[9] Ms. Miner reported her reservations to her supervisor, Colonel Harry Dowdy, on two occasions. During the second conversation, Ms. Miner indicated that she would prefer that a transfer be arranged for Ms. McKenna.[10]

Col. Dowdy offered Ms. McKenna a transfer to the China Ground Forces Section, explaining that the move would be career enhancing and that it was optional.[11] Ms. McKenna agreed to the transfer and began work on February 3, 1978 in the new section under the supervision of Lt. Col. Bernard Doe. Lt. Col. Doe had heard of Ms. McKenna's prior difficulties from one of the analysts in his section.[12] Col. Dowdy discussed these difficulties with Doe and suggested that Doe ask his staff to "lean over backwards to make her feel at home, to let her have a fresh start, and assist her in fitting into the section."[13]

All went extremely well for the first four months of Ms. McKenna's tenure in the China Ground Forces Section. In early June, Doe executed a report indicating that Ms. McKenna had been performing satisfactorily and should be retained past her probationary period.[14] He testified that this appraisal reflected the views of Ms. McKenna's co-workers as well.[15] On June 19, 1978, Doe also authored a memorandum signed by his superior, Capt. Martinez. The memorandum requested that Ms. McKenna be retained in the section. In the normal course, analysts were only permitted to remain in a section which had an open billet. Where there was no open billet, the probationary employee was an overage and had to be transferred to an available billet in another section. Doe tried to keep Ms. McKenna in an overage status until a billet became vacant in the section. Doe wrote that she "possesses high potential to attain positions of increasing responsibility with DIA in the future," and that she "epitomizes the 'new blood' this Agency must have if [it] ... is to continue to adequately support DoD and the national decisionmaking community."[16]

In his testimony, Doe asserted that this memorandum accurately reflected his unreservedly positive view of her performance, a view he maintained until July 20, 1978.[17] On that day, Ms. McKenna's three co-workers, all male, came to Doe and complained that Ms. McKenna had a poor attitude toward work assignments, and was abrasive and uncooperative. When Doe asked why they had not complained earlier, they stated that they had adhered to his request to give her a chance and that the problem had worsened considerably in the past two to three weeks.[18]

Four days later, Doe conducted a counseling session with Ms. McKenna, at which Col. Dowdy was also present. When told about her colleagues' complaints, she rejected responsibility for the problem and attributed it to her co-workers' sexism.[19] She recounted a number of incidents wherein women had been treated condescendingly, where sexist or suggestive remarks had been directed at her, and where obscene jokes, cartoons or photos had been

8. Tr. Oct. 8 at 202–04.

9. *Id.*

10. *Id.* at 32.

11. *Id.* at 61, 69.

12. *Id.* at 134.

13. Memorandum Opinion, Finding of Fact ¶ 15, Joint Appendix (J.A.) at 14–15.

14. Memorandum Opinion, Finding of Fact ¶ 3, J.A. at 9.

15. Tr. Oct. 8 at 146–47.

16. J.A. at 214.

17. Tr. Oct. 8 at 143.

18. Memorandum Opinion, Finding of Fact ¶ 15, J.A. at 15; Tr. Oct. 8 at 135–36.

19. Tr. Oct. 8 at 160.

exchanged.[20]  Doe gave these charges no credence, dismissing them "essentially as emotional counteraccusations made on the spur of the moment."[21]  At no point did Doe confront the co-workers with Ms. McKenna's claims of sexist treatment. Doe and Dowdy both regarded what they viewed as her unconstructive response to the counseling as indicative of a serious, perhaps intractable problem.[22]  After this session, Doe made inquiries into his personnel options although he testified that the decision to terminate had not been made at that point.[23]

Concerned about the counseling session, Ms. McKenna conferred with the senior civilian analyst, Dr. Romance, who brought her case to the attention of Doe and Dowdy's superior, Captain Martinez.  Martinez appointed Joseph Geibel to conduct an investigation into the validity of McKenna's performance appraisal and the fairness of the counseling session.  Geibel was also asked to ascertain "whether there was any sexist bias in the failure to forward promotion papers and in her treatment in her work environment."[24]

The Geibel investigation proceeded simultaneously with Doe and Dowdy's movements to terminate Ms. McKenna's employment.  During the same week that Ms. McKenna spoke to Martinez, Dowdy held a session with the coworkers which convinced him of their good faith and reliability.[25]  A few days later he met again with Ms. McKenna, who reiterated her view that the complaints were baseless and did not warrant discussion.[26]  Shortly after this second meeting, Dowdy met with his supervisor, Dr. Collins, who suggested that Ms. McKenna's prior supervisors be canvassed for statements evaluating her performance.[27]

On August 7 or 8, Geibel began to interview the concerned parties, including Doe, informing them that Ms. McKenna's complaint was based on allegations of sexist treatment.[28]  On August 7th as well, Ms. Miner, a prior supervisor, submitted her written statement solicited by Dowdy.[29]  On August 10th, Doe told Ms. McKenna that he was not forwarding her promotion, stating that he needed more time to observe her in view of her performance deficiencies and the ongoing investigation.[30]  Doe testified that he had not yet at this point decided to recommend termination, although he well knew that he had only a few days for further observation.[31]  On August 11, another prior supervisor, Ms. Miller, submitted her statement.[32]

On August 14, Doe executed the memorandum recommending termination based on Ms. McKenna's inability to cooperate with her colleagues and her unwillingness to attempt to ameliorate the situation.[33]  Dowdy, who had received similar reports of abrasiveness from each of Ms. McKenna's other supervisors, concurred in the recommendation.  Dr. Collins then forwarded the recommendation to the Acting Chief of Staff, Admiral Walsh.  Ms. McKenna received notice on August 16 that she would be terminated in two days.  She went immediately to the personnel office, where she complained of sex discrimination and was referred to an EEO officer.

The next day Admiral Walsh met with Ms. McKenna.  Walsh had requested the

20.  Tr. Oct. 7 at 45–46.

21.  Tr. Oct. 8 at 160.

22.  See id. at 136–37, 38.

23.  Id. at 138.

24.  Memorandum Opinion, Finding of Fact ¶ 21, J.A. at 17.

25.  Tr. Oct. 8 at 39.

26.  Id. at 40.

27.  Id. at 41–42.

28.  Tr. Oct. 7 at 166.

29.  See Def. Exh. B, J.A. at 269.

30.  Tr. Oct. 8 at 166.

31.  Id. at 167.

32.  See Def. Exh. C, J.A. at 270.

33.  See Def. Exh. A, J.A. at 267–68.

meeting because he was troubled that the problem had not surfaced until so late in the probationary period. The district court found that Admiral Walsh had scheduled the meeting because he "was looking for a way to overrule the decision which had been made" and considered the action "lousy personnel practice."[34] At the conclusion of the meeting, Walsh concluded that Ms. McKenna did not comprehend the seriousness of the problem, and that her termination was, despite the irregularities, in the best interests of the agency.

Ms. McKenna filed an administrative complaint of sex discrimination and retaliatory firing with DIA. An EEO officer found for the agency and Ms. McKenna appealed to the EEOC. The EEOC remanded the case to the agency for further consideration. When the agency refused to cooperate in the resolution of the EEO complaint, Ms. McKenna filed suit in district court, charging that her dismissal was motivated by sex discrimination, that it was in retaliation for her lawful complaints about her treatment, and that it was in violation of the agency's own procedures and therefore contrary to the requirements of the Administrative Procedure Act. The district court found for defendants on the sex discrimination and retaliation claims, and dismissed Ms. McKenna's APA claim as precluded by the exclusivity provisions of Title VII.

## II. ANALYSIS

### A. *The Discrimination Claim*

■■■ In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668,[35] the Supreme Court set out the order of proof in Title VII disparate treatment cases. In an action alleging disparate treatment, plaintiff must carry the initial burden of establishing a prima facie case. This burden is met if the plaintiff demonstrates: 1) that she belonged to a protected group; 2) that she applied and was qualified for an available position; 3) that, despite her qualifications, she was rejected; and 4) that, after the rejection, the position remained open and the employer continued to seek applications from persons of similar qualifications.[36] Once the complainant has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the termination.[37] The defendant does not bear the burden of persuasion; this burden remains at all times with the plaintiff.[38] The proffered rationale must simply raise a genuine issue of fact.[39] To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reason for the plaintiff's rejection. If the defendant carries this intermediate burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the articulated reason was pretextual. The burden of demonstrating pretext merges with the ultimate burden of proving intentional discrimination.[40] "This ultimate burden may be met in one of two ways. First, ... a plaintiff may persuade the court that the employment decision more likely than not was motivated by a discriminatory reason. In addition, however, this burden is also carried if the plaintiff shows 'that the employer's proffered explanation is unworthy of credence.'"[41]

---

**34.** Memorandum Opinion, Finding of Fact ¶ 39, J.A. at 23.

**35.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**36.** *Id.* at 802, 93 S.Ct. at 1824.

**37.** *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

**38.** *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**39.** *Id.* at 254–55, 101 S.Ct. at 1094.

**40.** *Id.* at 256, 101 S.Ct. at 1095.

**41.** *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983) (Blackmun, J., concurring) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (citations omitted).

In the instant case, both plaintiff and defendant met their initial burdens. Plaintiff established that she was female, sought a permanent analyst position for which she was qualified, was rejected for that position, and afterward the position remained open and the agency sought persons of comparable qualifications. Defendants rebutted the prima facie case by offering evidence that the denial of Ms. McKenna's promotion was based on her abrasiveness and continuing difficulties in working with her fellow analysts.

Ms. McKenna then attempted to prove that the proffered justification was pretextual. She introduced testimony designed to prove that her purported inability to cooperate was the product of a few insignificant incidents. In addition, she presented evidence of the pervasive sexism in the office environment. Many of her complaints are not trivial, and, in the aggregate, could have supported a reasonable inference of sex discrimination.

The district court, however, drew the contrary inference, finding that Ms. McKenna herself was the source of the problem and the effective cause of her own dismissal. An appellate court's scope for review of such findings is narrow. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." [42] The finding of no sex discrimination cannot be said to be clearly erroneous. We are troubled that the vague complaints of three men who were never heard at trial played such a critical role in Ms. McKenna's downfall; nevertheless, we are satisfied that, taken together, the testimony of all of Ms. McKenna's prior supervisors was

sufficient to support the finding of no discrimination.

■ Ms. McKenna claims that the district court's finding was tainted by its failure to consider both her unrebutted claims of sexist treatment and her comparative evidence. Ms. McKenna did not, however, bring a *Bundy*-type claim of sexist treatment.[43] Such a claim can be established by proving that the employer "created or condoned a substantially discriminatory work *environment*." [44] Rather, Ms. McKenna proceeded on a *McDonnell Douglas*-type theory, which requires proof that an adverse personnel action was taken and that it was motivated by discriminatory animus. The inquiry in such a case must focus on the circumstances surrounding the adverse personnel action. It was therefore within the discretion of the district court to consider and weigh the allegations of sexism as one of a number of factors bearing on the ultimate question of whether discrimination was the likely cause of her dismissal.

■ Ms. McKenna's comparative evidence was also considered and discounted by the district court. This data was, at best, inconclusive. Ms. McKenna presented evidence of five probationary employees who were found less than satisfactory in some performance category but were not terminated. Of those five, however, two were women, one had been incorrectly categorized and the remainder were cited for technical deficiencies, which were presumably correctable.[45] In addition, she offered evidence of two male employees who had similar personality problems, but merely had in-grade raises withheld. These two men, however, were not similarly situated; they were both permanent employees of the agency.[46] Applicable agency regula-

**42.** Fed.R.Civ.P. 52(a). This standard of review applies to findings of fact in Title VII cases. *See Valentino v. United States Postal Service,* 674 F.2d 56, 64 (D.C.Cir.1982); *Canino v. EEOC,* 707 F.2d 468, 470 (11th Cir.1983).

**43.** *See Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir. 1981). We express no opinion as to the merits of a *Bundy* claim on the facts of this case.

**44.** 641 F.2d at 943 (emphasis in original).

**45.** *See* Memorandum Opinion, Conclusion of Law ¶ 9, J.A. at 33; J.A. at 187–88.

**46.** *See McKenna v. Defense Intelligence Agency,* EEOC Appeal No. 01791313 at 3–4, J.A. at 179–80. *See also Sampson v. Murray,* 415 U.S. 61, 64, 94 S.Ct. 937, 940, 39 L.Ed.2d 166 (1974) (civil service regulations covering permanent employ-

tions mandated that probationary employees with serious performance problems were to be terminated, even if those problems would not have been good cause for terminating a permanent employee.[47] Finally, Ms. McKenna introduced the testimony of a woman in the agency who had complained of sexual harassment and later resigned. This employee, however, had been transferred, had requested that the investigation of her harassment complaint be discontinued, and resigned over an unrelated incident over a year later. In view of this rather ambiguous evidence, the district court's finding of no disparate treatment cannot be said to be clearly erroneous.

■ We must emphasize that our affirmance is predicated on the district court's finding that plaintiff's inability to get along with her co-workers was a function of her individual personality difficulties and was not related to her sex.[48] Appellee suggested at argument that where cooperation in a work situation is essential, an employee's failure to cooperate is cause for termination, whatever the reason for that failure. This is not the law. Where a woman is frustrated in her attempts to work cooperatively by the sexist attitudes and actions of her male co-workers, she is a victim of discrimination. Her dismissal, even where the work environment has degenerated completely, would be in violation of Title

VII. We are satisfied that this was not the situation in this case.

### B. *The Retaliation Claim*

■ The *McDonnell Douglas* framework is also applicable to claims of retaliatory dismissal.[49] In order to establish a prima facie case of retaliation, a plaintiff must show: 1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two.[50] As in a case of disparate treatment, this initial burden is not great. Plaintiff merely needs to establish facts adequate to permit an inference of retaliatory motive. Once this burden has been met, defendants must articulate a legitimate, nondiscriminatory reason for the personnel action.[51] At that point, plaintiff must prove by a preponderance of the evidence that the proffered reason was but a pretext for retaliation.[52]

In fitting the facts of the instant case into this framework, the district court engaged in a somewhat confused analysis. The court first posed the test for a prima facie case, but then analyzed the ultimate questions of retaliation and pretext.[53] Having concluded that plaintiff failed to carry its ultimate burden of proving that defendant's legitimate reason was pretextual, the district court then held that plaintiff had failed to prove either its claim of retaliation *or* its prima facie case.[54]

---

ees provide many protections not afforded probationary employees).

**47.** *See* DIA Reg. 22–31 at 3, J.A. at 209.

**48.** In its findings of fact, the district court credited the supervisors' appraisals of Ms. McKenna as abrasive, arrogant, and overbearing. In addition, the court found that she was unable to get along with male or female co-workers. *See* Memorandum Opinion, Findings of Fact ¶¶ 6, 12, 13, 30, 31, 34, J.A. at 10, 12, 13, 20, 21, 22; Memorandum Opinion, Conclusion of Law ¶ 4, J.A. at 26–27.

**49.** *See* B. Schlei & P. Grossman, Employment Discrimination Law 557–62 (2d ed. 1983).

**50.** *See Canino v. EEOC,* 707 F.2d 468, 471 (11th Cir.1983); *Smalley v. City of Eatonville,* 640 F.2d 765, 769 (5th Cir.1981); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied,*

450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

**51.** *See Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980).

**52.** *Id.*

**53.** *See* Memorandum Opinion, Conclusion of Law ¶ 7, J.A. at 28–32.

**54.** The district court also incorrectly engaged in the balancing test suggested by *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222 (1st Cir.1976). The *Hochstadt* balancing test is necessary when there is doubt whether plaintiff had engaged in a protected activity. Such an issue arises where the plaintiff has actively opposed the employer's practices. In *Hochstadt,* as part of her campaign for higher wages, plaintiff disseminated damaging

■ We are convinced that plaintiff did prove a prima facie case of retaliation. Ms. McKenna's complaints to Martinez and Romance were clearly protected activity. An adverse action followed. Given that a number of officers knew of the Geibel investigation and that the adverse action followed so closely, it is clear that there was enough evidence to establish the causal connection for the purpose of establishing a prima facie case. That Ms. McKenna's superiors did not know of her EEO complaint at the time of her dismissal does not preclude a causal connection. It was sufficient that they knew of an investigation authorized by a superior officer and related to sexist treatment.

Although the district court erred in finding that no prima facie case had been established, this error did not invalidate the court's ultimate finding of no retaliation. The district court conducted an analysis of pretext *as if* a prima facie case had been established. A full analysis of the ultimate issue therefore did not require proper resolution of the intermediate issue.

■ We also find that the district court's finding of no retaliation was not clearly erroneous. The record could support an inference that plaintiff's personality, not retaliation, was the likely cause of her dismissal. It is clear, moreover, that the process that ultimately led to her dismissal was already in motion at the time that Ms. McKenna's superiors learned of her complaints about her treatment. Hence, we decline to disturb the district court's holding on the issue of retaliatory dismissal.

## C. *The Administrative Procedure Act Claim*

In addition to her sex discrimination and retaliation claims, Ms. McKenna also brings suit under the Administrative Procedure Act. She charges that the agency did not follow its own procedures in effecting her dismissal and in failing to provide her with the requisite career counseling.[55] The district court held that Title VII precludes such suits under the APA. We find this conclusion to be in error.

The Supreme Court held in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 that Title VII is the sole and exclusive remedy for employment discrimination by the federal government.[56] Thus an aggrieved federal employee is precluded from bringing suit under other federal anti-discrimination statutes that apply more generally. This preclusive effect, however, is limited only to claims of illegal discrimination.

■ Ms. McKenna's claim under the APA is *not* one of discrimination. Rather, she charges that the agency, whether its motive was legal or illegal, failed to conform to its own regulations. She does not claim that these procedural violations constitute employment discrimination. Her claim of arbitrary treatment is entirely independent of her discrimination claim.

■ Although we hold that Ms. McKenna has a legally sufficient cause of action, we find nothing in the record to support her claim. Section 8(f)(3) of DIA regulation 22-31 provides for two weeks' notice of termination to probationary employees *if feasible*.[57] Section 8(h) provides that the termination action must be made effective two days prior to the anniversary date of

---

information about the future viability of her employer. The court considered whether her conduct, although motivated by the employer's illegal action, was so hostile and excessive that it did not merit protection. In the instant case, such an analysis was unnecessary. Ms. McKenna's conduct was not "opposition" under the first clause of § 704(a) of Title VII, 42 U.S.C. § 2000e-3. It was participation in an investigation under the second clause of that section. Such participation, when it is not accompanied by activities adverse to the employer, is clearly protected. Finally, even in cases where a bal-

ancing test is appropriate, the test should be conducted when the court is considering the prima facie case, not when the court is considering whether the legitimate reason is pretextual.

**55.** *See Mazaleski v. Treusdell,* 562 F.2d 701, 719 (D.C.Cir.1977).

**56.** 425 U.S. 820 (1976).

**57.** *See* DIA Reg. 22-31 at 4, J.A. at 210.

employment.[58] The agency complied with both of these regulations. The two week notice requirement was not mandatory. Given the late emergence of the problem and the need to act within the probationary period, the two weeks' notice was not feasible. In the circumstances of this case, the notice provided was adequate. The deadline for dismissal was also met. The anniversary date of employment was August 22, 1978. Termination had to be effected by August 20; Ms. McKenna resigned on August 18.

Ms. McKenna also complains that the agency failed to give her required career counseling and inadequately processed her EEO complaints. Nothing in the record supports these claims. Consequently, we dismiss as unproven Ms. McKenna's claim under the Administrative Procedure Act.

### D. *Procedural Issues*

On appeal, Ms. McKenna raises a variety of meritless claims regarding the conduct of the trial. She claims: 1) that the court improperly admitted her supervisors' testimony about the complaints of her co-workers; 2) that the court erroneously failed to give any weight to the character testimony of her prior and subsequent employers; 3) that the court refused to admit the entire EEOC administrative record; and 4) that the court mistakenly failed to draw appropriate inferences from defendants' failure to call Ms. McKenna's co-workers as witnesses. None of these contentions warrants extended consideration.

The supervisors' testimony about the difficulties in their sections was not hearsay. Such testimony was offered to illuminate their motives and actions as supervisors, not to prove that the co-workers had valid complaints. Further, it was within the discretion of the trial court not to consider the character references of Ms. McKenna's other employers. Ms. McKenna's problems arose in a specific professional context. It was proper for the court to hold that Ms. McKenna's performance in dissimilar employment contexts was not relevant. It was also within the court's discretion in a trial de novo to exclude admission of the entire administrative record and to permit counsel to introduce those portions deemed directly relevant. Finally, it was not error for the court to refuse to infer from the defendants' failure to call the co-workers that their testimony would have been unfavorable to them. Such an inference is permissible only in "carefully restricted . . . situations where it is 'peculiarly within' the 'party's power to produce' the witness and where, as well, the witness's testimony 'would elucidate the transaction.' "[59] Neither is the case here. Plaintiff could easily have called the witnesses; moreover, the co-workers were not necessary to "elucidate the transaction." The transaction was the decision to dismiss made by the supervisors, not the complaints made by the co-workers.

### CONCLUSION

Appellant McKenna has failed to demonstrate that the district court's findings of no discrimination or retaliation were clearly erroneous. In addition, she has failed to prove her cause of action under the Administrative Procedure Act. The order of the district court is therefore affirmed.

*So ordered.*

---

58. *See* DIA Reg. 22–31 at 5, J.A. at 211.

59. *Wynn v. United States,* 397 F.2d 621, 625 (D.C.Cir.1967) (quoting *Pennewell v. United States,* 353 F.2d 870, 871 (D.C.Cir.1965)).