James R. FUDD, Plaintiff,

v.

**SECRETARY OF the TREASURY, Defendant.**

**Civ. A. No. 85–0347.**

United States District Court, District of Columbia.

Feb. 18, 1986.

James H. Heller, Kator, Scott & Heller, Washington, D.C., for plaintiff.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, John D. Bates, Asst. U.S. Attys., Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, James R. Fudd, is a journeyman plate printer at the Bureau of Engraving and Printing. He brings this action against the Bureau under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that he was illegally denied promotion to the position of Acting Plate Printer Foreman in 1984 because of his race and because of his opposition to perceived past race discrimination within the Bureau, particularly with respect to such promotions. This case proceeded to trial by the Court on November 25, 1985, and continued for two days. The parties have now filed proposed findings of fact and conclusions of law, and replies to the other party's proposals. Defendant's Proposed Findings of Fact and Conclusions of Law (DPFF and DPCL) (filed Jan. 13, 1986) are attached hereto and made a part hereof. Portions of Plaintiff's Proposed Findings of Fact and Conclusions of Law (PPFF and PPCL) (filed Jan. 13, 1986) are incorporated by reference into this Memorandum.

### I.

Plaintiff has been a journeyman plate printer at the Bureau since 1976. PPFF at

¶ 2. In 1979, plaintiff and a group of other plate printers at the Bureau formed a group called the Black Caucus of Plate Printers, of which plaintiff later became the head. Its purpose was to voice the concerns of black plate printers to Bureau management and the plate printer union. PPFF at ¶ 4. In 1982, the Black Caucus wrote a letter to the Bureau Director protesting "blatant discrimination" against blacks and favoritism in promotions at the Bureau. PPFF at ¶ 19. Three members signed the letter, one of which was plaintiff.

The solicitation and promotion process at issue began in late 1983 when Robert Heygster, superintendant of the Bureau Plate Printing Division in which plaintiff is employed, decided that additional Acting Plate Printer Foremen should be hired. DPFF at ¶ 6. The positions were advertised under Vacancy Announcement PP84–1 on January 16, 1984. DPFF at ¶ 8. Heygster had originally considered using an assessment center to evaluate candidates. Such a system would have the advantage of allowing persons outside the division to evaluate the candidates. DPFF at ¶ 10. The Personnel Staffing Division informed Heygster that the assessment center system would be costly and take a long time to implement. Heygster thus decided to use a selection system consisting of a crediting plan and rating panel, a system frequently employed by the Bureau in promotion decisions. DPFF at ¶ 10.

Heygster himself designed the crediting plan. The plan included four basic criteria, which were: (1) the ability to operate equipment; (2) the ability to supervise operations and personnel; (3) ability as a technical expert in plate printing, including knowledge of materials; and (4) experience in setting up new jobs and making necessary changes to complete work assignments. DPFF at ¶ 13. The plan provided for levels of qualifications within each criterion with point ranges assigned to each level of ability. PPFF at ¶ 38.

The PP84–1 application had three parts: (1) the applicant's standard Personal Qualifications Statement; (2) a Supplemental Experience Statement completed by the applicant; and (3) a Supervisory Appraisal Form completed by the applicant's current foreman. PPFF at ¶ 31. The Supervisory Appraisal Form asked each supervisor to rate each candidate in each of the four categories on a scale of 1 to 5. Twenty-nine candidates applied for the position, four of whom were black. DPFF at ¶ 66.

Heygster also selected the ranking panel. He chose Jerry Hudson, Willy Barnes and Lawrence Luckel, all Plate Printer Foremen and each on one of the three plate printer shifts. Hudson and Luckel are white and Barnes is black. DPFF at ¶ 17. Heygster met with the panel and said that he wanted no information regarding their deliberations, but only a Certificate of Eligibles from which he would make the final choice of candidates. He did not indicate the relative weights to be given the three parts of the application. PPFF at ¶ 32. The panel received its instructions from Carolyn Drewery of the Personnel Office who remained available to the Panel members for consultation during the rating process. DPFF at ¶ 31; PPFF at ¶ 33. Drewery suggested a rating system which the panel followed. The panel members individually rated each candidate in each category. After reaching individual ratings, the panel met to decide upon composite scores. DPFF at ¶ 32; *see* PPFF at ¶ 33.

Plaintiff's Supervisory Appraisal Form was completed by his foreman, Roscoe Hutzell. Hutzell had twice recommended plaintiff for cash awards of $500 and $800, respectively. DPFF at ¶ 25. Hutzell rated plaintiff as follows:

ability to operate equipment—4

technical expertise and ability to supervise operations personnel—3

knowledge of materials—4

experience in setting up new jobs and changes—5

DPFF at ¶ 21. Hutzell also completed supervisory appraisal forms for two other candidates, both white. Their ratings in the four categories were: 4, 5, 5, 5; and 4, 4, 5, 5. Hutzell testified in detail as to why he gave plaintiff and the other two candidates the scores he did. He also testified

that he did not know of plaintiff's involvement in the Black Caucus.

All candidates received individual ratings from the panel member which were then put together into a composite rating. DPFF at ¶ 34. The panel then compiled a Certificate of Eligibles from those individuals with the highest composite scores. The panel then submitted the list to Heygster who, after interviewing the individuals on the list, chose three candidates. Several weeks later, Heygster asked for a second Certificate of Eligibles and chose two more candidates. One of the selectees, Irving Chase, is black. DPFF at ¶¶ 54–62.

Plaintiff was not included on the Certificate of Eligibles. DPFF at ¶ 52. Plaintiff's scores as compared to the five selectees were as follows:

| Name | Panel | Hudson | Luckell | Barnes |
|------|-------|--------|---------|--------|
| Vass | 98 | 97 | 99 | 98 |
| Grubby | 97 | 97 | 97 | 96 |
| McClure | 96 | 95 | 95 | 98 |
| Shields | 95 | 95 | 94 | 97 |
| Chase (black) | 85 | 85 | 83 | 87 |
| Plaintiff | 54 | 46 | 56 | 59 |

DPFF at ¶¶ 36, 37. Each panel member testified in detail as to why they gave plaintiff and the selectees the ratings they did.

## II.

The Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) set out the following burdens of proof in a Title VII case:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ...
> Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. 252–53, 101 S.Ct. at 1093 (citations omitted). *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) articulates the elements of plaintiff's prima facie case. Plaintiff must show: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. 411 U.S. at 802. Courts have modified the fourth *McDonnell Douglas* factor to apply to an employer's failure to promote. In addition to the first three factors listed in *McDonnell Douglas,* a plaintiff claiming failure to promote must show that "other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied." *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir. 1981).

■ This order and allocation of proof for a *general disparate treatment case* has also been adapted and applied to retaliation cases. B. Schlei & P. Grossman, *Employment Discrimination Law* 557 (2d ed. 1983). In a retaliation case, plaintiff must show: (1) he was engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984).

■ According to the Supreme Court in *Burdine, supra,* "The burden of establishing a prima facie case is not onerous." 450 U.S. at 253, 101 S.Ct. at 1094. And in a reprisal case, "[a]s in a case of disparate treatment, the initial burden is not great." *McKenna, supra,* 729 F.2d at 790. Here, plaintiff is black, he applied for the position of Acting Plate Printer Foreman, and he was not selected for the position whereas other, white, individuals were. DPFF at ¶ 2. Plaintiff has thus established a prima facie case of race discrimination. As to plaintiff's retaliation claim, he was a member, and is now the head, of the Black Printers Association, formerly the Black Caucus of Plate Printers. PPFF at ¶ 4.

Plaintiff was one of three signers of a letter written in 1982 by the Black Caucus leadership to the Bureau Director complaining of "blatant discrimination" against blacks and favoritism in promotions to the positions of Foreman and Acting Foreman within the Plate Printing Division. PPFF at ¶ 19. The 1984 selection was the first one to occur after plaintiff signed the Black Caucus letter. PPCL at ¶ 7. Two of the promotion panel members indicated that they knew of the Black Caucus and that they knew that plaintiff's two co-signers of the 1982 letter were Black Caucus members. PPFF at ¶ 48. Although they denied knowledge of plaintiff's membership, their knowledge of the membership of two of the three co-signers of the letter may raise the inference of a causal connection between plaintiff's membership and the employment action. Plaintiff has thus demonstrated a prima facie case of race discrimination and the Court will assume, for purposes of this Memorandum, that plaintiff has established a prima facie case of retaliation under Title VII.

■ Plaintiff's prima facie case, however, only raises the *inference* of discrimination or retaliation. Defendant can dispel that inference by articulating a legitimate, nondiscriminatory reason for the employment action. *Burdine, supra,* 450 U.S. at 254–55, 101 S.Ct. at 1094. Comparative lack of qualifications is a legitimate, nondiscriminatory reason for an employment action. *Valentino v. United States Postal Service,* 674 F.2d 56, 64 (D.C.Cir.1982). Here, defendant has articulated comparative lack of qualifications as the "primary reason" for the employment action at issue. DPCL at ¶ 15. Once defendant has articulated a legitimate, nondiscriminatory reason for the employment action at issue, plaintiff bears the ultimate burden of proving by a preponderance of the evidence that illegal considerations actually motivated defendant. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093. Such proof of discriminatory motive need not be by direct evidence, but may be by circumstantial evidence. *King v. Palmer,* 778 F.2d 878, 882 (D.C.Cir.1985).

## III.

■ The crux of plaintiff's claim is that the system used in 1984 to select Acting Plate Printers was unduly subjective and thus left room for discriminatory animus to enter the promotion decision. Plaintiff argues that the subjectivity of the system is evident from allegedly anomalous ratings given the candidates when compared with their application materials. *See* PPFF (Appendix). Even unrelated to race, however, plaintiff's proof that the ratings at issue were anomalous is defective. First, plaintiff isolates specific elements of an individual's application and compares them to an overall score reached by consideration of a number of factors. Moreover, he argues that his experience in certain areas should be comparable to the different experiences of other individuals. For example, plaintiff argues that his military experience as a squad leader should be comparable to union leadership experience of other candidates. PPFF at ¶ 44. Plaintiff also argues about the relative weight to be given plaintiff's experience on certain types of presses vis-a-vis other candidates' experience on different types of presses. PPFF at ¶ 39. But plaintiff offered no expert to review the applications at issue and testify that, in his expert opinion, the ratings were in fact anomalous. The Court is not equipped to determine the relative merit of one period of time on a certain type of press as opposed to another period of time on several other types. All three members of the rating panel testified at trial and plausibly explained the difference in their ratings of different candidates with specific reference to the application materials and their rating forms. Also militating in favor of the rationality of the ratings given is that the three panel members did not vary widely in their individual assessments of the candidates. DPFF at ¶ 36. These individual assessments were done before consultation to reach a composite score thus their similarity indicates that the panel members had similar conceptions of the qualifications desired. DPFF at ¶ 34. Without expert testimony to the contrary, the Court is

unwilling to find the ratings at issue anomalous.

Even though the ratings at issue are not patently anomalous, plaintiff could still prove that racial or retaliatory bias entered the rating system. The ratings at issue were not achieved through standardized tests. Thus, subjective judgment is allowed to enter the candidate evaluations and this subjectivity creates the potential for racial bias. *Davis v. Califano*, 613 F.2d 957, 965–66 (D.C.Cir.1979). At the same time, "subjective hiring procedures are not violative of Title VII *per se*. Title VII comes into play only when such practices result in discrimination." *Hester v. Southern Railway Co.*, 497 F.2d 1374, 1381 (5th Cir.1974). According to the Supreme Court, in a disparate treatment case such as this, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of difference in treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977); *see Valentino, supra*, 674 F.2d at 60 n. 1 ("[d]iscriminatory motive is ultimately an essential element.").

Plaintiff supports his argument that the subjectivity allowed racial bias to enter the selection process with a number of facts he claims should lead to an inference of bias. First, out of the 29 candidates, the 4 black candidates were rated: 11, 25, 28 (plaintiff) and 29. PPFF at ¶ 42. Also in this connection, plaintiff cites the percentage of blacks at the Bureau in 1982 and 1984 to have been approximately 30% in non-supervisory plate printer positions and only 7% in the Plate Printer Foreman cadre. PPFF at ¶¶ 7, 8. These statistics could support an inference of racial bias in the plate printer promotion process, but without more, they are insufficient. Moreover, a comparison by race of the ratio of applicants to selectees in the 1984 competition reveals that 1 of 4, or 25%, of the blacks were selected compared to 4 of 25, or 16%, of the whites. DPFF at ¶ 66. Thus, although only one black was chosen, blacks were statistically favored in the selection. Plaintiff argues that the selection of the one black candidate, Chase, was mere tokenism, implying that plaintiff was an equally qualified but unfavored black candidate. PPFF at ¶ 54. Plaintiff claims that "[a]s with the 4 white selectees, there is no evidence that Mr. Chase was better qualified than Mr. Fudd for the position of Acting Plate Printer Foreman under any objective rating process." PPFF at ¶ 55. But plaintiff confuses the burden of proof. As stated earlier, plaintiff has failed to demonstrate through expert testimony that the black candidates did not deserve the ratings that they received. Absent this proof, Chase's selection proves nothing of benefit to plaintiff's case. Plaintiff bears the burden of proof on this issue and has failed to sustain it.

Plaintiff also argues that the comparison of his score of 430/500 (86/100) on a previous Acting Plate Printer Foreman Vacancy application with his 54/100 rating in the 1984 competition is significant. PPFF at ¶ 14. But again, plaintiff offers no proof that this disparity was significant or was due to his race. As to its significance, the scoring systems employed in the 1981 and 1984 competitions were similar, but were not completely the same. PPFF at ¶ 27. No competent expert testified, nor was any other testimony elicited to prove, that an individual should have received like ratings under the two systems. The facts of a different rating system, a different rating panel, different candidates, and the different intervening experiences of plaintiff between 1981 and 1984 and other candidates, require that such testimony be based on substantial analysis and certainly prevent the Court from inferring an invidious significance to the comparison of the 1981 and 1984 scores without such testimony.

Even if plaintiff had shown that the discrepancy between the two scores were significant, plaintiff fails to produce sufficient proof to allow an inference that any such discrepancy was based on racial or retaliatory motivation. Although the 1981 Black Caucus letter occurred between the two competitions, the inference that the letter caused plaintiff's low rating in retaliation is too tenuous to adopt. The two white members of the panel testified that they did not

**6**

know plaintiff to be a Black Caucus member. DPFF at ¶ 41. Plaintiff questions their denial but offers little proof to indicate that the panel members knew about plaintiff's membership. If members were generally known around the workforce, plaintiff could have offered testimony to this effect. And, even had plaintiff demonstrated that the panel members should have known about plaintiff's membership, he would have had to have proved that they were influenced by it. Moreover, the Court, concerned that such corroborating evidence of racial and retaliatory motivation could exist, held a status conference on February 14, 1986, to determine if justification existed to reopen the record. Colloquy with counsel indicated that plaintiff has no further corroborating evidence to offer, thus reopening the record was not justified.

Plaintiff also asserts, with no corroboration, that the score of a white candidate in the 1981 competition was upgraded to place him above plaintiff and allow the white candidate to receive the position in 1981. PPFF at ¶ 14. Plaintiff alleges that he saw through a transparent envelope held up to the light that the white candidate's score had been changed. PPFF at ¶ 13. First, this incident bears only a tenuous relationship to the 1984 solicitation and selection which involved different candidates and a different rating panel. More importantly, the incident is uncorroborated and Barnes, the other individual alleged to have been in the room with plaintiff was on the stand and could have been questioned about it. Plaintiff alleges that the circumstance is suspicious. But the change could have been for any number of reasons other than racial reasons. Again, plaintiff bears the burden of proof and has failed to persuade that the incident (1) was race-based and (2) bears a causal relationship to the 1984 selection.

Finally, plaintiff vaguely argues that Luckel and Hutzell were prejudiced against blacks. The evidence on these points was sparse and did not support the inference that either of their behaviors were racially-motivated.

In sum, plaintiff has failed to prove by a preponderance of the evidence that he was not selected for the position of Acting Plate Printer Foreman in 1984 because of his race or because of his membership in the Black Caucus. Accordingly, the accompanying order will direct entry of judgment for the defendant and will dismiss plaintiff's complaint with prejudice.

## ORDER

For reasons stated in the accompanying Memorandum, it is this 17th day of February 1986, hereby

ORDERED: that judgment should be, and hereby is, ENTERED for defendant in this action; and it is further

ORDERED: that plaintiff's complaint should be, and hereby is, DISMISSED with prejudice.