914 F.2d 298
 286 U.S.App.D.C. 242
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Lih Y. YOUNG, Appellant,
v.
SECRETARY OF UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES.
 No. 89-5387.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 1, 1990.
Rehearing and Rehearing En Banc Denied Dec. 17, 1990.
 
 Before RUTH BADER GINSBURG, SENTELLE and HENDERSON, Circuit Judges.
 JUDGMENT
 Per Curiam.
 
 
 1
 This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of counsel for the parties. Upon full review of the issues presented, the court is satisfied that appropriate disposition of the appeal does not warrant a published opinion. See D.C.Cir.R. 14(c). For the reasons stated by the district court in its Findings of Fact and Conclusions of Law filed July 26, 1989, and in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 Following a two-day bench trial, the district court returned findings of fact and conclusions of law adverse to plaintiff-appellant Lih Y. Young on her charges against the Department of Health and Human Services (HHS) of 1) employment discrimination on account of her Chinese national origin, and 2) reprisals, all in violation of Title VII of the Civil Rights Act of 1964 as amended. The record fully supports the district court's judgment, which we therefore affirm.
 
 The Discrimination Claim
 
 5
 Young maintains, in support of her race and national origin discrimination claim, that she was (1) given inaccurate data with which to work, and (2) denied essential training. She points, however, to no other employee who shared her concerns about, or difficulties with, the data; nor does the record otherwise bear out her assertions of serious inaccuracies.* Instead, testimony that the district court credited indicated that Young's concerns stemmed not from systematic inaccuracies in the data she was furnished, but from her own lack of comprehension of the data base. See Joint Appendix at 36-40 (Bordes); 58-59 (Morris); 60-61 (Weder); 65 (Rolston).
 
 
 6
 In short, it is a question of fact whether any deficiencies in the data justified Young's failure to complete her assignments. The trial judge resolved the question reasonably in light of the evidence. His resolution is not vulnerable to attack as "clearly erroneous." See Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside [on appeal] unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.").
 
 
 7
 Regarding training, Young emphasizes that, despite frequent requests, she was not given training in advanced SPSS (SPSS-X) techniques until November 1985, by which time she had already received several unfavorable evaluations. Although she was eventually authorized to receive this training, Branch Chief Bordes maintained that Young's job did not require SPSS-X familiarity. See Joint Appendix at 318. Indeed, through much of Young's stay at the Office of Family Assistance, she was not required to use the computers for data retrieval: during her first projects (through April 1985), she was asked only to analyze data that others had retrieved, and during her last projects (from November 1985 to her termination in June 1986), she was asked only to prepare a plan of how she would address her assignments. Young's claim that SPSS-X training was essential to satisfactory performance of the work she was assigned thus draws scant force from the record.
 
 
 8
 We note, moreover, that because Young did not establish that SPSS-X training was essential to her job performance, the reasons why Branch Chief Bordes refused her requests for such training are scarcely relevant. Much of Young's "pretext" argument on the training issue, however, hinges on her claim that Borde's stated reasons for denying that training were not credible. See Brief for Appellant at 7-8, 20-21; Appellant's Reply Brief at 3 & n. 3.
 
 The Reprisal Claim
 
 9
 The district court had before it on this branch of Young's complaint two conflicting interpretations of the evidence: Young's narrative of reprisal, and HHS's counternarrative of employee incompetence and recalcitrance. Each of the alleged acts of reprisal could be understood, at least equally well, as a response to Young's failure timely to submit completed work product over a two-year period.
 
 
 10
 Young's attack on the trial court's disposition of this claim is more formal than substantive. She contends, first, that the district court failed to make specific fact findings to support its rejection of her reprisal claim. The court's opinion makes clear, however, that it credited HHS's witnesses and interpretation of the evidence; our cases have not required the district court to recite the evidence it discredited. See De Medina v. Reinhardt, 686 F.2d 997, 1011-12 (D.C.Cir.1982) (affirming finding of no discrimination although trial court made no mention whatsoever of plaintiff's evidence).
 
 
 11
 Second, Young faults the district judge for indicating that she had not established a prima facie case. Once a Title VII case has been fully tried on the merits, however, the essential question is not whether plaintiff has adduced some evidence on each element of a prima facie case, but whether the court's ultimate finding of no discrimination, or no retaliation, should be disturbed. See United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-15 (1983); Mitchell v. Baldrige, 759 F.2d 80, 83-84, 88 (D.C.Cir.1985); McKenna v. Weinberger, 729 F.2d 783, 791 (D.C.Cir.1984). Even if Young's EEO complaint timing evidence, considered in isolation, might support an inference of retaliation, the final decision properly rested on the full history of her employment relation. HHS introduced abundant evidence of Young's work failures--evidence that the district court rationally credited as the reason for her dismissal. On the record made at trial, we can hardly gainsay the district court's conclusion that
 
 
 12
 [t]he severity of the adverse actions increased in relation to the plaintiff's poor quality of work, not in relation to the plaintiff's protected activity.
 
 
 13
 D.D.C. Findings of Fact and Conclusions of Law, filed July 26, 1989, at 12. Because the proof made that conclusion at least a permissible one, the district court's judgment warrants our approbation.
 
 
 
 *
 At oral argument, counsel for Young featured a point initially made in the reply brief. Counsel urged that a memo from Young's supervisor admitted that the data Young was provided contained serious inaccuracies. See Appellant's Reply Brief at 9 & n. 2; Joint Appendix at 281-87. Even if we were to indulge this tardily-raised argument, it would not affect our judgment. The memo, read in conjunction with the other evidence in the record, hardly indicates inaccuracies in the data so serious as to mandate a ruling that Young justifiably failed to complete her assignments