**Simeon SISAY, Plaintiff,**

v.

**GREYHOUND LINES, INC., et al., Defendants.**

**No. Civ.A. 97–2383(RMU).**

United States District Court, District of Columbia.

Dec. 31, 1998.

Plaintiff Simeon Sisay commenced this action against defendants Greyhound Lines, Inc. ("Greyhound"), Emma Gray, and Ray Robinson alleging national origin discrimination and retaliation in violation of 42 U.S.C. §§ 2000e and 12203 (1994), willful discharge, malicious interference with contractual relations, and intentional infliction of emotional distress.[1] Presently, the defendants move for summary judgment on the remaining four counts, arguing that the plaintiff failed to (1) exhaust administrative remedies with regard to the national origin discrimination claim, (2) establish retaliation because he did not engage in a statutorily protected activity, (3) establish constructive discharge for lack of demonstrated intentional discrimination, or (4) establish intentional infliction of emotional distress because of the absence of sufficiently outrageous conduct. Upon review of the parties' submissions, the relevant law, and the record herein, the court grants the defendants' motion for summary judgment.

## II. Background

Plaintiff Simeon Sisay, a national of Sierra Leone, began working for defendant Greyhound in 1989 as a Ticket Agent (later retitled Customer Service Associate). In December 1992, three years after he was hired by defendant Emma Gray, a Terminal Manager, the plaintiff was promoted to Lead Customer Service Associate by defendant Ray Robinson, also a Terminal Manager. Throughout his employment, however, the plaintiff at times had trouble following company policies, and this apparently compromised his ability to direct other employees and train them in their duties. For example, on one occasion the plaintiff left $1,500.00 in cash unattended on a ticket counter in violation of Greyhound's cash handling procedures and on other occasions he failed to fill out deposit registers or to properly complete his paperwork in accordance with Greyhound's established policies. In short, the defendants allege having to frequently moni-

Chris Asher, Washington, DC, for Simeon Sisay, plaintiff.

Karla Grossenbacher, William Schurgin, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, for defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting the Defendants' Motion for Summary Judgment

## I. Introduction

This matter comes before the court on the defendants' motion for summary judgment.

---

1. In a subsequent pleading, the plaintiff abandoned the malicious interference with contractual relations claim. (*See* Plaintiff's Response to

Defendants' Motion for Summary Judgment ("Plaintiff's Opposition") at 22.) Thus, the court dismisses that claim with prejudice.

tor the plaintiff's work and coach him in his duties. Consequently, the defendants contend that the plaintiff did not set a good example for other employees.

Beginning in late 1991, the plaintiff alleges employees of defendant Greyhound started treating him in a discriminatory manner. According to the plaintiff, discriminatory acts based on national origin came in the form of verbal insults and derogatory comments. On one occasion in 1991, the plaintiff alleges his supervisor, Diane Swayne, told him he could neither follow instructions nor speak English very well. Following that incident, Ms. Swayne also allegedly gave the plaintiff an undeserved negative written evaluation to which the plaintiff responded by submitting a letter in protest. In November 1995, a co-worker, Kimberly Chaney, verbally insulted the plaintiff. Again, the plaintiff documented this incident in a letter to management. Additionally, the plaintiff allegedly received menial job assignments, such as cleaning out lockers for defendant Greyhound.

In September 1992, the plaintiff testified in a co-worker's unemployment compensation hearing. Following his participation in the hearing, the plaintiff alleges that the defendants engaged in retaliatory acts by refusing to promote him. The plaintiff cites six specific instances where co-workers bypassed him in the promotion process. On three occasions, the plaintiff alleges the defendants provided no notice of the promotion opportunity, preferring to engage in "hand picking" their favorites. Defendant Robinson allegedly "hand picked" Juaquin Retana and Margaret Barnes by recommending them for promotions they ultimately received. In a similar manner, Keith Elliot was "hand picked" for a promotion at the Silver Spring, Maryland location. On three other occasions during 1996 and 1997, the plaintiff applied for promotions. In 1996, he applied for two Terminal Supervisor positions, one of which was given to a white American male from Hawaii and the other to an African–American female named Rochelle Brown. In February 1997, the defendants selected Elitor Banda, an African male, over the plaintiff for a Terminal Supervisor posi-

tion at their Philadelphia, Pennsylvania location.

After making several unsuccessful attempts for a promotion, the plaintiff scheduled several meetings with the defendants to discuss his situation. At one such meeting in March 1997, defendant Robinson notified the plaintiff that he had been demoted. Two months later, the plaintiff notified defendant Gray of his desire to quit. On May 31, 1997, following the advice of defendant Gray that it would be more advantageous for the plaintiff to resign rather than to quit, the plaintiff handed in his resignation. As a result of the defendants' actions during his employment, the plaintiff claims he suffered mental anguish and emotional distress which caused him to seek spiritual guidance and healing for three years after his resignation.

On June 30, 1997, the plaintiff filed a formal administrative complaint with the EEOC alleging race discrimination and retaliation. On July 16, 1997, the plaintiff received a right-to-sue letter from the EEOC and subsequently filed this action.

### III. Analysis

#### A. Standard of Review

The district court may enter summary judgment where the moving party demonstrates that there is no genuine issue of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has presented a properly supported motion, the nonmoving party must go beyond the pleadings to identify evidence that would allow a reasonable jury to find in the nonmovant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Drawing from affidavits, depositions, and answers to interrogatories, the nonmovant must identify specific facts indicating that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In the District of Columbia, Local Rule 108(h) supplements Rule 56 by placing the burden on the parties to crystallize for the district court the material facts and relevant

portions of the record. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C.Cir.1996). Rule 108(h) states that a district court may admit a moving party's statement of material facts unless such facts are controverted in the statement of genuine issues filed in opposition to the motion. *See* Local Rule 108(h).[2] In accordance with Rule 108(h), the court takes defendant Greyhound's Statement of Material Facts as to Which There is No Genuine Issue ("Defendants' Statement of Undisputed Facts") as conceded because the plaintiff failed to include a separate statement of controverted material facts in dispute with his opposition to the defendants' motion for summary judgment. Furthermore, each undisputed fact in the defendants' statement is accompanied by an appropriate reference to the record.

A court making a summary judgment determination must view the facts in a light most favorable to the nonmovant, thus giving the nonmovant the benefit of all reasonable inferences derived from the evidence in the record. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. The court's function at the summary judgment stage is not to weigh the evidence, but to determine whether there is sufficient evidence for a reasonable fact finder to return a verdict in the nonmovant's favor and warrant a trial. *See id.* This approach is especially necessary in discrimination cases because discriminatory intent is difficult to establish. *See Krodel v. Young,* 748 F.2d 701, 707 (D.C.Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985).

**B. Allocation of Burdens**

The Supreme Court has set forth a three step analysis to allocate the burden of proof in a Title VII case alleging discriminatory treatment and retaliation. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff has the burden of proving by a preponderance of the evidence that a prima facie case of discrimination and retaliation exists. *See McDonnell,* 411 U.S. at 802, 93 S.Ct. 1817. Second, if the plaintiff succeeds in presenting a prima facie case, then the burden of proof shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's treatment. *See id.* Third, should the defendant meet this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not the true reasons, but rather a pretext for discrimination and retaliation.

**C. National Origin Discrimination Claim Dismissed for Failure to Exhaust Administrative Remedies**

The first issue for the court to address is whether or not the plaintiff's national origin discrimination claim is properly before this court. The defendant argues for dismissal of the national origin discrimination claim for failure to exhaust administrative remedies because only race discrimination and retaliation were alleged in the plaintiff's EEOC complaint. The plaintiff argues that his national origin claim reasonably relates to his prior allegation of race discrimination and therefore afforded the defendants the requisite sufficient notice. Thus, before reaching the substantive merits of the defendants' motion for summary judgment, the court must determine whether the plaintiff's national origin discrimination claim is appropriately before the court.

---

2. Local Rule 108(h) provides in pertinent part:
 Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. ... In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

A plaintiff alleging a Title VII violation must first file an administrative charge with the EEOC. This allows the agency to investigate the charge, puts the charged party on notice, and narrows the issues for prompt adjudication. *See Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir.1995). Filing an administrative charge with the EEOC is a jurisdictional prerequisite to the maintenance of a Title VII suit in district court. *See Love v. Pullman Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). A Title VII action following the filing of the EEOC charge is "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994)). Title VII claims must at least "reasonably arise from the 'administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. United States Postal Service,* 665 F.2d 482, 491 (4th Cir.1981)). Although the administrative charge requirement "should not be construed to place a heavy burden on 'individuals untrained in negotiating procedural labyrinths, the requirement of some specificity in a charge is not a mere technicality.'" *Id.* (internal citations omitted). A court cannot permit a litigant to bypass the Title VII administrative process through liberal interpretation of an administrative charge. *See id.*

Here, the plaintiff alleged only race discrimination and retaliation in his EEOC charge. Absent from that complaint is any indication of a claim of national origin discrimination either in the form of express words or factual allegations that would support such a claim. Therefore, as the defendants argue, the plaintiff provided no formal notice of the claim. The plaintiff contends, however, that the national origin and race claims are so closely related that the national origin claim could reasonably be expected to grow out of the race discrimination charge. The plaintiff further contends the defendants' investigation following notice of the EEOC charge should have covered national origin discrimination because the alleged incidents were carried out in the same manner. Contrary to the plaintiff's contentions, how-ever, the law recognizes that allegations of national origin discrimination are not so closely related to allegations of racial discrimination such that a conclusion about one could reasonably be expected to grow out of an investigation of the other. Indeed, Title VII recognizes that race and national origin are ideologically distinct. *See Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 949 F.Supp. 13, 19 (D.D.C.1996) (stating that allegations of race discrimination are not relevant to claims of national origin discrimination); *see also Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973) (defining national origin as "the country where a person was born, or, more broadly, the country from which his or her ancestors came"); *Roach v. Dresser Indus. Valve and Instrument Div.,* 494 F.Supp. 215, 216 (W.D.La.1980) (finding that the legislative history of Title VII precisely states that a person's national origin has nothing to do with race). Thus, under Title VII, allegations of race discrimination may be wholly unrelated to a claimant's country of origin. *See Kun,* 949 F.Supp. at 19. Such allegations, therefore, do not properly put defendants on notice to investigate possible discrimination based on national origin. *See id.* Consequently, the plaintiff's claim of national origin discrimination, raised for the first time in the complaint before this court, must be dismissed for failure to exhaust administrative remedies.

**D. Retaliation Not Established**

Despite the fact that the court does not have jurisdiction over the plaintiff's claim of national origin discrimination, the plaintiff is not precluded from asserting a retaliation claim. *See Harvey v. District of Columbia,* 949 F.Supp. 874, 876 (D.D.C.1996). The plaintiff claims that after testifying in a co-worker's employment discrimination case against Greyhound the defendants retaliated by refusing to promote him. The defendant argues that the plaintiff fails to establish a prima facie case of retaliation because the alleged employment discrimination case was actually an unemployment compensation hearing and not statutorily protected under Title VII. Even assuming participation in an

unemployment compensation hearing constituted a protected activity, the court nevertheless concludes that the plaintiff has failed to establish a prima facie case of retaliation because of the absence of evidence showing the necessary causal connection between the alleged protected activity and some subsequent adverse action taken by Greyhound. Accordingly, the court will grant the defendants' motion for summary judgment as to this count.

A prima facie case of retaliation requires a showing that: (1) the employee engaged in a statutorily protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. *See McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C.Cir. 1984). In an alleged retaliatory failure to promote claim, the plaintiff must also show that he was qualified for the position as part of his prima facie case. *See Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985). The plaintiff's initial burden merely requires establishing facts adequate to permit an inference of retaliatory motive. *See McKenna*, 729 F.2d at 790. Once a prima facie case has been established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the personnel action. *See McKenna*, 729 F.2d at 790. If the defendant carries this burden, then the plaintiff must prove by a preponderance of the evidence that the proffered reason was a pretext for retaliation. *See id.*

The court assumes for purposes of summary judgment that testifying in an unemployment compensation hearing falls within the scope of a protected activity under Title VII and thus satisfies the first requirement. The second element is satisfied because the plaintiff's demotion clearly constitutes an ad-

verse employment action. The absence of a causal connection between the protected activity and adverse employment action, however, prevents the establishment of a prima facie case. The causal connection may be established by showing that the employer knew of the employee's protected activity and the adverse personnel action took place *shortly after* that activity. *See id.* (emphasis added). Here, five years passed between the 1992 unemployment hearing and the 1997 demotion, thus severing the causal connection. Furthermore, four months after participating in the hearing, the plaintiff received a promotion to Lead Customer Service Associate,[3] thus undermining his theory that the defendants' attitude toward him negatively changed as a result of his testifying. Accordingly, the court concludes that the plaintiff has failed to establish a prima facie case of retaliation and will grant summary judgment in favor of the defendants.[4]

### E. Constructive Discharge Not Established[5]

In examining the plaintiff's constructive discharge claim, the court must decide whether or not the working conditions in the plaintiff's workplace rose to a level of intolerableness that would have driven a reasonable person to resign. The defendants argue that the plaintiff's constructive discharge claim fails because he can demonstrate neither intentional discrimination nor aggravating factors to support such a claim. The plaintiff alleges that the defendants' conduct in systematically denying him deserved promotions and requesting his resignation amounted to a willful intent to force him out of the company. The court concludes that the plaintiff has failed to satisfy his burden of proof with respect to his claim of constructive discharge and, therefore, will grant summary judgment for the defendants.

---

3. (*See* Defendants' Statement of Undisputed Facts at 2.)

4. Assuming the plaintiff did establish the first three requirements of the prima facie case of retaliation, his claim still fails because the defendants state in their Rule 108(h) statement, each fact taken as conceded, that the plaintiff was not qualified for the promotions sought. (*See* Defendants' Statement of Undisputed Facts at 5.)

5. The plaintiff's failure to present an actionable employment discrimination claim on procedural grounds does not preclude the assertion of a constructive discharge claim. Additionally, the D.C. Circuit recognizes that a Title VII plaintiff may recover for constructive discharge despite the fact that it has not been alleged in the administrative complaint. *See Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C.Cir.1994).

■ An actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that he had no option but to end his employment. *See Villines v. United Brotherhood of Carpenters and Joiners of America,* AFL—CIO, 999 F.Supp. 97, 104–5 (D.D.C.1998) (citing *Clark v. Marsh,* 665 F.2d 1168, 1173–74 (D.C.Cir.1981) (internal citations omitted)). Thus, the issue here is whether the defendants created or condoned intolerable working conditions to such an extent that would have driven a reasonable person to resign. *See id.* Construing the evidence in a light most favorable to the nonmovant, the court finds the alleged facts insufficient to withstand summary judgment.

■ Here, the plaintiff's allegations of the defendants' failure to promote him are insufficient to support a claim of constructive discharge. *See Downey v. Isaac,* 622 F.Supp. 1125, 1132 (D.D.C.1985). This is especially so given that the undisputed facts in this case suggest that the plaintiff lacks the desired qualifications for the positions he sought including, for example, an ability to work with other employees, manage time efficiently and follow company procedures.[6] In addition, allegations of intentional discrimination based on national origin are undermined by the defendants' promoting an African male to one of the six positions the plaintiff alleged he was wrongfully denied. Furthermore, the beratings by the plaintiff's supervisor, which allegedly occurred five years prior to the plaintiff's resignation, are too remote and isolated for the court to recognize them as intolerable working conditions that would drive a reasonable person to quit. Even if the court found the failure to promote and the beratings to be indications of intentional discrimination, without more, the plaintiff still fails to establish constructive discharge. As evidence of additional unfavorable actions, however, the plaintiff alleges that the assignment of unfavorable jobs and his ultimate demotion contributed to an intolerable work environment. The court finds the extraneous work assignments insufficient to establish the requisite aggravating factors. Additionally, although the demotion may be construed as an adverse employment decision, the plaintiff provides no facts to show substantial changes in his work as a result of this action. *See Ternullo v. Reno,* 8 F.Supp.2d 186, 193 (N.D.N.Y.1998) (finding that the denial of a promotion, criticisms of work performance, and an employee's dissatisfaction with assignments and responsibilities do not support a constructive discharge); *Boze v. Branstetter,* 912 F.2d 801, 805–06 (5th Cir.1990) (holding that the loss of responsibilities, critical performance evaluations, a verbal insult, and changed working conditions were insufficient to support a constructive discharge); *cf. Clark,* 665 F.2d at 1173–75 (finding a continuous pattern of non-promotion sufficient to establish constructive discharge when coupled with an outstanding employment record, a dearth of referrals, vigorous pursuit of advancement opportunities, and substantial supervisory experience). The recorded incidents in the instant case were neither extreme nor frequent and, therefore, the court concludes that the plaintiff has failed to show that a reasonable person would be compelled to quit under the circumstances in which he worked.

### F. Intentional Infliction of Emotional Distress Standard Not Met

■ Lastly, the defendants contend that the evidence fails to demonstrate sufficiently outrageous conduct to maintain an action for intentional infliction of emotional distress. The plaintiff alleges that curtailed employment prospects with the defendants, continued humiliation, and willful discrimination satisfy the requisite intent to cause mental

---

**6.** As evidence of the plaintiff's lack of qualifications, the defendants' uncontroverted facts noted *his inability to motivate fellow co-workers,* maintain good relationships with other employees, and build team relationships. Furthermore, the defendants stated that the plaintiff had to be "coached" due to his failure to prioritize and plan ahead which indicated his inability to direct his own work, much less the work of other employees. The plaintiff's failure to follow cash handling procedures, once leaving $1,500.00 unattended on a ticket counter, provided an additional reason to deny him promotions. (*See* Defendants' Statement of Undisputed Facts, at 5–8.)

anguish and emotional distress. The court concludes that the alleged conduct does not rise to the level of sufficiently outrageous conduct to maintain an action for intentional infliction of emotional distress and, therefore, will grant summary judgment in favor of the defendants on this count as well.

 An action for intentional infliction of emotional distress may be maintained upon a showing that (1) the tortfeasor engaged in intentional or reckless conduct, (2) the conduct was wanton and outrageous in the extreme, and (3) the conduct caused serious mental distress. *See Lucero–Nelson v. Washington Metropolitan Area Transit Authority,* 1 F.Supp.2d 1, 8 (D.D.C.1998). Liability exists when the conduct exceeds "all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.App.1980).

 Here, the plaintiff alleges that observing the promotions of co-workers he trained, performing in a capacity beyond his position description, and continuously being denied promotion opportunities establish the defendants' wanton and outrageous conduct. The court disagrees. "Liability for infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Waldon,* at 1076. The defendants' motion for summary judgment will therefore be granted.

## IV. Conclusion

Having concluded that there are no material facts in dispute and that the plaintiff has failed to offer sufficient evidence for a reasonable fact finder to return a verdict in his favor on any of the four counts alleged in his complaint, the court will grant summary judgment on all counts in favor of the defendants. An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 31 day of December, 1998.

### ORDER

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously executed and issued this 31 day of December, 1998, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED;** and it is

**FURTHER ORDERED** that this case shall be removed from the court's docket and all other pending motions are denied as moot.

**SO ORDERED.**